**HYDE & SWIGART, APC**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone:   (619) 233-7770
Facsimile:    (619) 297-1022

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Clark R. Conforti, Esq. (SBN: 317698)
clark@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone:   (800) 400-6808
Facsimile:    (800) 520-5523

*Attorneys for Plaintiff*,
Andrew Laich

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW LAICH, an individual, | Case No.: 5:19-cv-00411 |
| Plaintiff, | **COMPLAINT FOR DAMAGES:** |
| v. | 1. **VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Cal. Bus. & Prof. Code § 17529.5)** |
| DREAM WORLD PARTNERS INC., a Nevada corporation, | |
| Defendant. | |
| | **JURY TRIAL DEMANDED** |

1

**COMPLAINT**

# I. INTRODUCTION

1. In 2003, the California Legislature found that "[r]oughly 40 percent of all e-mail traffic in the United States is comprised of unsolicited commercial e-mail advertisements (hereafter spam) and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam." *See* Bus. & Prof. Code § 17529(a).

2. The California Legislature also found that spam e-mails do cause damage and acknowledged the cost of spam in the United States in 2003: "According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000,000), including lost productivity and the additional equipment, software, and manpower needed to combat the problem. California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000)." California Business & Professions ("Bus. & Prof.") Code § 17529(d).

3. However, since the California Legislature declared its findings regarding the cost of spam in 2003, the actual cost has increased dramatically. In 2012, the Journal of Economic Perspectives published an academic paper which estimated that e-mail spam cost American businesses and consumers roughly $20 billion annually. *Rao, Justin M., and David H. Reiley*. 2012. "The Economics of Spam." *Journal of Economic Perspectives*, 26 (3): 87-110.[1]

4. As of November of 2018, spam e-mail messages accounted for 54.3 percent of the total email traffic worldwide. *Symantec Corporation,* Monthly Threat Report (December 2018).[2]

///

///

---

[1] htttps://www.aeaweb.org/articles?id=10.1257/jep.26.3.87 (last visited Dec. 19, 2018)

[2] https://www.symantec.com/security-center/publications/monthlythreatreport (last visited Dec. 19, 2018)

## II. SUMMARY OF THE COMPLAINT

5. Plaintiff ANDREW LAICH ("Plaintiff") brings this complaint for a cause of action against Defendant DREAM WORLD PARTNERS INC. d/b/a *Dream-Singles.com* ("Defendant"), a Nevada corporation, for advertising in at least three hundred and twenty-three (323) unlawful spams sent to Plaintiff.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes in their entirety.

6. Plaintiff never gave "direct consent" as required by Bus. & Prof. Code § 17529.1(d)[3] to receive commercial e-mail advertisements from, or had a "preexisting or current business relationship" pursuant to Bus. & Prof. Code § 17529.1(*l*)[4] with Defendant.

7. The spam e-mails sent by Defendant materially violated Bus. & Prof. Code § 17529.5 ("Section 17529.5") because there was materially false and deceptive information: (1) by the use of a third-party domain name without permission, and/or (2) contained in or accompanying the e-mail headers, specifically the From Name and/or Sender E-mail Address, and/or (3) used in Subject Lines which are misleading to a reasonable person relative to the contents of the e-mails' body and/or subject matter of the advertisement.

8. All of the offending spam e-mails were sent to a California e-mail address.[5]

9. Defendant is strictly liable for advertising in spam e-mail sent by its third-party

---

[3] "Direct consent" means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative. Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "Preexisting or current business relationship," as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. Bus. & Prof. Code § 17529.1(*l*).

[5] "California electronic mail address" or "California e-mail address" means any of the following: (1) an e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address in this state; (2) an e-mail address ordinarily accessed from a computer located in this state; or (3) an e-mail address furnished to a resident of this state. *See* Bus. & Prof. Code § 17529.1(b).

marketing agents, as are the marketing agents themselves.

10. Spam recipients are not required to allege or prove reliance or actual damages to have standing. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii). Nevertheless, Plaintiff did suffer damages by receiving the spam e-mails. *See, e.g.,* Bus. & Prof. Code §§ 17529(d), (e), (g), (h). However, Plaintiff elects to recover statutory damages only and forego recovery of any actual damages. *See* Bus. & Prof. Code § 17529.5(b)(1)(B).

11. This Court should award liquidated damages of $1,000 per unlawful e-mail as provided by Bus. & Prof. Code § 17529.5(b)(1)(B)(ii) because Defendant failed to implement reasonably effective systems designed to prevent the advertising in unlawful spams in violation of the statute.

12. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

13. Plaintiff is entitled to attorneys' fees pursuant to Bus. & Prof. Code § 17529.5(b)(1)(C).

### III.  PARTIES

**A.  Plaintiff ANDREW LAICH**

14. Plaintiff is now, and at all times relevant has been, an individual domiciled in the State of California, County of San Bernardino.

15. Plaintiff owns and at all relevant times herein owned a computer with an Internet connection.  This computer is located in the State of California.  Plaintiff ordinarily uses this computer to access Plaintiff's e-mail address.

16. The spams at issue were sent to Plaintiff's e-mail address *Andrew_Laich@yahoo.com*. Plaintiff ordinarily accesses these e-mail accounts from California.

**B.  Defendant DREAM WORLD PARTNERS INC.**

17. Defendant is currently, and was at all relevant times, a Nevada corporation, headquartered in Reno, Nevada.

18. Plaintiff is informed, believes, and thereon alleges that Defendant is the owner and operator of the website *Dream-Singles.com.*

19. Defendant describes the website and business:

> Dream Singles was founded in 2003. With time and effort, we have

evolved into a leading international online dating agency. The fundamentally winning combination of cutting-edge technology, a devoted team of hard working employees and unequaled service have generated a plethora of successful meetings, successful relationships and marriages. We have more than 500 offices in Ukraine and Russia to help you to find your dream love. Our services promote *the most* genuine meetings, enabling our members to develop endearing and lasting relationships that could even last a lifetime.[6]

## IV.   JURISDICTION AND VENUE

### A.   The District Court has Diversity Jurisdiction

20. Plaintiff brings this Complaint based on federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

21. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with this state, and purposely avails itself of the markets in this state through the promotion, sale, and marketing of its products and services provided on Defendant's websites that are targeted to California consumers. Defendant's contacts with the state of California render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

### B.   Venue is Proper in the Central District's Eastern Division

22. Venue in the United States District Court, Central District of California, Eastern Division, is proper pursuant to 18 U.S.C. § 1391(b) because the injury to Plaintiff occurred in the County of San Bernardino and Defendant does business within the State of California and the County of San Bernardino.

## V.   THE 323 UNLAWFUL SPAM E-MAILS

### A.   The E-mails at Issue are "Spam"

23. Plaintiff received *at least* three hundred and twenty-three (323) spam e-mails advertising Defendant's websites at Plaintiff's "California e-mail address" as defined by Bus. & Prof. Code § 17529.1(b).

---

[6] https://dream-singles.com/about_us.html (last visited December 26, 2018)

24. The e-mails at issue are "commercial e-mail advertisements"[7] because they advertise goods and services.

25. The e-mails are "unsolicited commercial e-mail advertisements"[8] because Plaintiff never gave Defendant "direct consent" to send commercial e-mails to the e-mail account at issue, nor did Plaintiff ever use this e-mail account to establish a "preexisting or current business relationship" with Defendant.

26. Plaintiff did not opt-in to receive e-mails from Defendant's marketing agents.

27. Plaintiff did not consent or acquiesce to receive the spam e-mails at issue.

28. Plaintiff did not waive any claims related to the spams at issue.

29. Defendant advertised in, sent, and/or conspired to send at least three hundred and twenty-three (323) unlawful spams that Plaintiff received at Plaintiff's "California e-mail address."

30. The spam e-mails are all unlawful due to materially false and deceptive information contained in or accompanying the e-mail headers, and/or misleading Subject Lines, as described in more detail below.

**B. Spams Containing Third Parties' Domain Names Without Their Permission Violate Business & Professions Code § 17529.5(a)(1)**

31. Section 17529.5(a)(1) prohibits spams containing or accompanied by a third party's domain name without the permission of the third party.

32. Almost all of the spams that Plaintiff received advertising Defendant's website contained third-party domain names without each of the third-parties' permission, and therefore

---

[7] "Commercial e-mail advertisement" means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. Bus. & Prof. Code § 17529.1(c).

[8] "Unsolicited commercial e-mail advertisement" means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) the recipient has not provided direct consent to receive advertisements from the advertiser; and (2) the recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. Bus. & Prof. Code § 17529.1(o).

6
COMPLAINT

        violated Section 17529.5(a)(1).

33. These third-party domain names were used in the Sender E-mail Address field in each of the spam e-mails' headers. The domain names in Sender E-mail Addresses used are *@genealogydresses.com,* *@contactcostco.com,* *@email.jonesbootmaker.com,* and *@interactive.wsj.com.*

34. Plaintiff is informed, believes and thereon alleges that *genealogydresses.com* is owned and operated by Genealogy Boutique & Formals, Inc. Plaintiff is informed, believes and thereon alleges that Genealogy Boutique & Formals, Inc. did not permit the use of their domain name in any of the spam e-mails at issue.

35. Plaintiff is informed, believes and thereon alleges that *contactcostco.com* is owned and operated by Costco Wholesale Membership Inc. Plaintiff is informed, believes and thereon alleges that Costco Wholesale Membership Inc. did not permit the use of their domain name in any of the spam e-mails at issue.

36. Plaintiff is informed, believes and thereon alleges that *jonesbootmaker.com* is owned and operated by Pavers LTD. Plaintiff is informed, believes and thereon alleges that Pavers LTD did not permit the use of their domain name in any of the spam e-mails at issue.

37. Plaintiff is informed, believes and thereon alleges that *wsj.com* is owned and operated by Dow Jones & Company, Inc. Plaintiff is informed, believes and thereon alleges that Dow Jones & Company, Inc. did not permit the use of their domain name in any of the spam e-mails at issue.

38. Furthermore, since the spam e-mails were not sent from these purported Sender E-mail Addresses, the spam e-mail headers contained falsified and forged information, which also violates Section 17529.5(a)(2), infra.

**C. Spam E-mails With Generic Or False From Names Violate Business & Professions Code § 17529.5(a)(2) Because They Misrepresent *Who I*s Advertising in the Spam E-mails**

39. Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying e-mail headers.

40. The "From" line field is part of e-mail headers. The From line has two distinctive parts: (1) the From Name, and (2) the Sender E-mail Address. For example, if an e-mail's

"From" 'line states: "John Doe <johndoe@yahoo.com>", the From Name is "John Doe" and the Sender E-mail Address is "<johndoe@yahoo.com>."

41. The From Name in an e-mail's header is designed to identify *who* the e-mail is from. The Internet Engineering Task Force created a collection of "Requests for Comment" ("RFCs") that define the rules and standard protocols that enable e-mail to work. According to RFC 5322 at ¶ 3.6.2 (emphasis in original):

> The "From:" field specifies the author(s) of the message, that is, the mailbox(es) of the person(s) or system(s) responsible for the writing of the message. . . . In all cases, the "From:" field SHOULD NOT contain any mailbox that does not belong to the author(s) of the message.

42. The text of a From Name field cannot misrepresent *who* the e-mails are from.

43. In almost all e-mail programs, the inbox view displays a list of e-mails, only showing the From Name, Subject Line, and Send Date. This list generally does not show the Sender E-mail Address or the contents of an e-mail body. Therefore, even if the Sender E-mail Address and/or the body of the e-mail identifies the advertiser, recipients will not know that until they have already clicked to open the e-mail.

44. Empirical evidence demonstrates that the "From" line is the most important factor that e-mail recipients use to determine whether or not an e-mail is spam. *See* eMarketer, E-Mail Open Rates Hinge on 'Subject' Line.[9]



45. The only content of a "From" line visible before an e-mail is opened is the "From Name." Therefore, a From Name that misrepresents *who* a spam is from is a material misrepresentation of the most important part of the e-mail header—not merely a clerical

---

[9] http://www.emarketer.com/Article/E-Mail-Open-Rates-Hinge-on-Subject-Line/1005550 (Oct. 31, 2007).

error.

46. Although Plaintiff does not bring any claims under the federal CAN-SPAM Act, the Federal Trade Commission ("FTC") identified the From Name as the first item in misleading header information in its guide to CAN-SPAM compliance when it stated: "Don't use false or misleading header information. Your "*From*," "To," "Reply-To," and routing information – including the originating domain name and e-mail address – *must be accurate and identify the person or business who initiated the message*." Federal Trade Commission, CAN-SPAM Act: A Compliance Guide for Business (emphasis added).[10]

47. In *Balsam v. Trancos, Inc.,* 203 Cal. App. 4th 1083 (2012) (*Balsam*), the court of appeal upheld the trial court's ruling that seven unlawful spam e-mails that included generic From Names ("Paid Survey," "Your Business," "Christian Dating," 'Your Promotion," "Bank Wire Transfer Available," "Dating Generic," and "Join Elite") violate the statute because they misrepresent *who* the e-mails are from.

48. More specifically, *Balsam* confirmed that generic From Names that "do not exist or are otherwise misrepresented when they do not represent any real company and cannot be readily traced back to the true owner/sender" violate the statute, even if the spam e-mails identified the advertiser in the body of the e-mails. *Id*. at 1091, 1093. Therefore, truthful information in the body of a spam does not cure misrepresented information contained in or accompanying the headers.

49. Here, the From Names of the spam e-mails used generic From Names in violation of Section 17529.5(a)(2).

50. Examples of From Names which include women's first names, "Irina," "Feng," "Jennifer," "Charlotte," "Katya," "KIM-K," and "Isabella," are all generic From Names. Plaintiff is informed and believes and thereon alleges no such women sent the spams at all, and therefore these From Names misrepresent who the spams are actually from.

51. Examples of From Names such as "Russian Dating," "F*ckBuddyMsg," and "F*ckBuddy Request," contain misrepresented information because the spams are not

---

[10] http://www.business.ftc.gov/documents/bus61-can-spam-act-compliance-guide-business

from any of these purported senders. These terms could just as easily refer to numerous dating websites such as AsianDate.com or UkranianCharm.com—some of Defendant's competitors.

52. Plaintiff is informed and believes and thereon alleges that Defendant knowingly chose to advertise using generic From Names precisely so the recipients will *not* know who the e-mails were really from when viewing the e-mails in their inbox. This forces recipients to open the e-mails to see if the e-mails might actually be from someone with whom the recipient has had dealings, or if the e-mails are in fact, as is the case here, nothing but spam.

53. In *Rosolowski v. Guthy-Renker LLC,* 230 Cal. App. 4th 1403 (2014) *(Rosolowski)*, the court permitted From Names that were not the sender's official corporate name as long as the identity of the sender was readily ascertainable in the body. However, the From Names in that case (Proactiv and Wen Hair Care) were the advertiser's fanciful trademarks and well-known brands with their own websites. But here, unlike the spams in *Rosolowski*, the same From Name–used at least 10 times–is generic; not a well-known trademark and/or brand readily associated with Defendant. There is no way ordinary consumers, looking at the same or similar e-mail From Name in their inbox, could readily associate them with Defendant because the From Name was Plaintiff's own name. Thus, *Balsam* would control, not *Rosolowski*.

**C. Spam E-mails Sent From Domain Names Registered In a Manner That Prevents Them From Being Readily Traceable to the Sender Violates Business & Professions Code § 17529.5(a)(2)**

54. Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information contained in or accompanying e-mail headers.

55. Registration information for the domain names used to send spams is information contained in or accompanying e-mail headers.

56. "[H]eader information in a commercial e-mail is falsified or misrepresented for purposes of Section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the

actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS." *Balsam*, *supra*, 203 Cal. App. 4th at p. 1101 (emphasis in original).

57. All of the spams that Plaintiff received advertising Defendant was sent (or purportedly sent) from domain names that:

- Were third-party domain names, or
- Were "proxy" registered

58. None of the spam e-mails received by Plaintiff advertising Defendant were readily traceable to the sender by querying the Whois database, in violation of Section 17529.5. Balsam, 203 Cal. App. 4th at 1097-1101. For example:

59. Almost all of the spams that Plaintiff received purported to be sent from third-party e-mail addresses which did not send the spam e-mails—*genealogydresses.com, contactcostco.com, jonesbootmaker.com,* and *wsj.com*. By using forged third-party e-mail addresses in the Sender E-mail Address field of these spams, the spam e-mails were rendered untraceable to the sender by querying the WHOIS database, in violation of Section 17529.5. *See Balsam*, *supra*, 203 Cal. App. 4th at pp. 1097-1101.

60. Many spams were sent from proxy-registered domain names—*anearlierversionof.com, copyrightdirectives.com, deeplyintotheflow.com, delightcrowd.com, distantfutures.net, divisornumbers.com, equipmentbodyweight.com, financialinformations.com, fundamentalpoints.com, initiativestart.com, instrumentalsandtone.com, lookingtorefresh.com, moretraditionalmethods.com, publicattentions.com, theologyconnection.com,* and *enormousamuses.com*. Thus, these spam e-mail's sender is untraceable and violates Section 17529.5. *See Balsam*, *supra*, 203 Cal. App. 4th at pp. 1097-1101.

61. Plaintiff could not identify Defendant or its spamming affiliates who sent the spams at issue by querying the Whois database for the domain names used to send all of the spam e-mails at issue.

**D. Spam E-mails With Misleading Subject Lines Relative to the Contents of the E-mails Violate Business & Professions Code § 17529.5(a)(3)**

62. Section 17529.5(a)(3) prohibits Subject Lines that are misleading relative to the contents or subject matter of the e-mails.

63. All of the spams that Plaintiff received contain Subject Lines that are misleading, in violation of Section 17529.5(a)(3). Some examples include:

- You've got a new message :{I'm Online , Please join me…}
- You Received a F*ckbuddy Msg
- SOMEONE HAS REQUESTED TO BE YOUR BUDDY!
- See my nude pics and let's meet
- Hi Andrew Laich, You Received a F*ckbuddy Sext --Let's meet Now
- Do not open at work--Jenna Has unlocked her private photos for you!
- You Received a F*ckbuddy Sext --Let's meet Now
- Jenny26 wants a booty call--I sent you my sexy Video
- See my nude pics & let's meet

64. These Subject Lines are misleading relative to the subject matter of the e-mails, which violate Section 17529.5(a)(3).

65. All of these Subject Lines in spams received by Plaintiff are materially misleading because they are false and likely to mislead a recipient into believing that: (1) a personal relationship exists between Plaintiff and the purported women—when no such relationship exists, (2) that these women actually sent the spams—which they have not, (3) that women on the Defendants' websites are interested in finding a relationship—when the women on the websites at issue are actually paid to communicate, and (4) that the emails are of a personal nature when they are in fact of a commercial nature.

**E. Defendant is Strictly Liable for the Spam E-mails Sent By Its Marketing Agents**

66. Plaintiff is informed and believes and thereon alleges that Defendant contracted with third-party advertising networks and affiliates to advertise its website for the purpose of selling products and services for a profit.

67. Defendant voluntarily chose to outsource its advertising to third-party spam networks and spammers.

68. Advertisers are liable for advertising in spam e-mails, even if third-parties sent the e-mails: "There is a need to regulate the advertisers who use spam, as well as the actual spammers because the actual spammers can be difficult to track down due to some return addresses that show up on the display as 'unknown' and many others being obvious fakes and they are often located offshore. The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements." Bus. & Prof. Code § 17529(j)(k). "It is unlawful [ ] *to advertise* in a commercial e-mail advertisement [ ] under any of the following circumstances…" Bus. & Prof. Code § 17529.5 (emphasis added).

69. Section 17529.5(a) "makes an entity *strictly liable* for advertising in a commercial e-mail . . . *regardless of whether the entity knew that such e-mails had been sent* or had any intent to deceive the recipient." *Hypertouch Inc. v. ValueClick Inc. et al.,* 192 Cal. App. 4th 805, 820-21 (2011) (emphasis added).

70. Defendant's agents are also liable for sending the unlawful spams. *See Balsam*, generally.

F. **No Proof of Reliance or Actual Damages is Necessary Because Plaintiff Seeks Only Statutory Liquidated Damages**

71. The California Legislature set liquidated damages as $1,000 per spam. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

72. Plaintiff is informed and believes and thereon alleges that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Bus. & Prof. Code § 17538.43(b).

73. Plaintiff's rightful and lawful demand for liquidated damages in the amount of $1,000 per e-mail is necessary to further the California Legislature's objective of protecting California residents from unlawful spam e-mails.

74. Section 17529.5 does not require Plaintiff to allege actual damages or prove reliance on the statements made in the advertisements contained in the spams, or purchase the goods

and services advertised in the spams. *Recipients* of unlawful spam have standing to sue and recover liquidated damages. *Hypertouch,* 192 Cal. App. 4th at 822-23, 828; Bus. & Prof. Code § 17529.5(b)(1)(A)(iii).

75. Although Plaintiff did suffer damages by receiving the unlawful spams advertising Defendant's products and services in the state of California, at a California e-mail address, Plaintiff foregoes any actual damages and only seeks liquidated statutory damages. Bus. & Prof. Code §§ 17529(d), (e), (g), (h); Bus. & Prof. Code § 17529.5(b)(1)(B).

**G. Defendant's Actions Were Willful and Preclude any Reduction in Statutory Damages**

76. Section 17529.5 authorizes this Court to reduce the statutory damages to $100 per spam. Bus. & Prof. Code § 17529.5(b)(2).

77. To secure the reduction, Defendant has the burden of proof to demonstrate that: (1) it has *established* practices and procedures to prevent unlawful spamming, (2) it has *implemented* those practices and procedures, and (3) that the practices and procedures are *effective*.

78. Plaintiff is informed and believes and thereon alleges that Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

79. Even if Defendant had established any practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not reasonably designed so as to be effective.

80. Even if Defendant reasonably designed practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not implemented so as to be effective.

81. Moreover, Plaintiff is informed and believes and thereon alleges that Defendant intended to deceive recipients of their spam messages through the use of falsified, misrepresented, and/or misleading information in From Names, domain name registrations, and Subject Lines, as described herein.

14
**COMPLAINT**

82. Defendant's agent consciously wrote the Subject Lines and From Names.
83. Defendant's agent consciously concealed their identity in their domain name registration.
84. Defendant's agent consciously concealed their identity in the spams by forging a third-party's e-mail address into the Sender E-mail Address field in the e-mail header.
85. Defendant's agent went to great lengths to create falsified and misrepresented information contained in and accompanying the e-mail headers in order to deceive recipients, Internet Service Providers, and spam filters.
86. Defendant intended to profit, actually profited, and continue to profit, and were unjustly enriched by the wrongful conduct as described herein.

## FIRST CAUSE OF ACTION

**[Violations of California Restrictions on Unsolicited Commercial E-mail, California Business & Professions Code § 17529.5]**
**(Against All Defendants)**

87. Plaintiff hereby incorporates the foregoing paragraphs as though set forth in full herein.
88. Plaintiff received the spams within one year prior to filing this Complaint.
89. Defendant advertised in, sent, assisted others in sending, conspired to send, contracted with others to send, and/or otherwise caused to be sent at least three hundred and twenty-three (323) unsolicited commercial e-mail advertisements to Plaintiff's California electronic mail addresses that had materially falsified and/or misrepresented information contained in or accompanying the e-mail headers, and/or contained Subject Lines that were misleading in relation to the bodies of the e-mails, in violation of Section 17529.5. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.
90. The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per e-mail.
91. Defendant has not established and implemented, with due care, practices and procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that would entitle them to a reduction in statutory damages.
92. Plaintiff seeks reimbursement of attorneys' fees and costs as authorized by Section

17529.5(b)(1)(C).

93. The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5. By prosecuting this action, Plaintiff expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

## PRAYER FOR RELIEF

### (Jointly and Severally Against All Defendants)

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant(s) for:

103. An Order from this Court declaring that Defendant violated Bus. & Prof. Code § 17529.5, by advertising in and sending unlawful spams.

104. Liquidated damages against Defendant in the amount of $1,000 per unlawful spam, as authorized by Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

105. Reasonable attorneys' fees and costs as authorized by Bus. & Prof. Code § 17529.5(b)(1)(C).

106. Disgorgement of all profits derived from unlawful spams directed to California residents; monies to be turned over to the Unfair Competition Law Fund and used by the California Attorney General to support investigations and prosecutions of California's consumer protection laws.

107. Costs of suit.

108. Such other and further relief as the Court deems proper.

///
///
///
///
///

## DEMAND FOR JURY TRIAL

109. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

**HYDE & SWIGART, APC**

Date: March 6, 2019           BY: s/ Joshua B. Swigart
                              Joshua Swigart, Esq.
                              *Attorneys for Plaintiff*